UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HARRY JOHN ZAROOGIAN, : | |
| Plaintiff, : | |
| : | |
| v. : | C.A. No. 16-531S |
| : | |
| BANK OF AMERICA, : | |
| Defendant. : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On September 26, 2016, Plaintiff Harry John Zaroogian filed *pro se* a complaint, along with a motion for leave to proceed *in forma pauperis* ("IFP"), against Bank of America (the "Bank") alleging that the Bank committed a criminal act by charging his checking account with an extended overdrawn balance charge and overdraft fees. The IFP motion has been referred to me for determination pursuant to 28 U.S.C. § 636(b)(1)(A); it renders this case subject to preliminary screening under 28 U.S.C. § 1915(e)(2)(B). For the reasons that follow, I find both that the IFP motion is deficient and that the complaint fails to state a claim.[1] Thus, I recommend that Plaintiff be afforded an opportunity to file a new IFP application and an amended complaint. If the identified deficiencies are not cured within thirty days of this Court's adoption of this report and recommendation, I recommend that the IFP motion be denied and the complaint be summarily dismissed without prejudice.

**I.    IFP Application**

---

[1] Because Plaintiff is *pro se*, I have employed a liberal construction of his complaint. See Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000). Nevertheless, it fails to state a claim.

The IFP form requires an applicant to answer under pains and penalties of perjury questions regarding income, assets and debts, as well as to identify others who contribute to the applicant's support, to allow the Court to "hold the balance steady and true as between fairness to the putatively indigent suitor and fairness to the society which ultimately foots the bill." Temple v. Ellerthorpe, 586 F. Supp. 848, 850 (D.R.I. 1984) (Selya, J.); see 28 U.S.C. § 1915(a) (persons otherwise unable to access courts may proceed without paying such costs as $400 filing fee, which are then defrayed at public expense). In this instance, Plaintiff's application fails to answer completely several questions on the form. Read together with the exhibits to his complaint, the incomplete application raises a serious question regarding whether he is eligible to proceed at public expense.

For example, Plaintiff states that he is not currently employed, has an army pension and collects social security, ECF No. 2 at 1, yet he circled "self-employment," but did not respond (one way or the other) to Question 3, which asks whether he receives money from self-employment. ECF No. 2 at 2. More troubling, his IFP application states that he does not have any bank accounts, ECF No. 2 at 2, yet the gravamen of his claim against the Bank arises from the charges incurred when he had an overdraft in his bank account. ECF No. 1; ECF No. 4. Even more confounding is one of Plaintiff's exhibits to his complaint, a copy of several pages from his September bank statement, reflecting activity in a checking account in his sole name. ECF No. 4. The statement reveals that, as of September 12, 2016, his checking account balance was $60,096.89, as of September 14, 2016, it had risen to $70,693.11, and by September 16, 2016, it was up to $125,690.61. ECF No. 4. Later in the same day, Plaintiff wrote a check for $125,311.12, leaving only $349.87 in the account, resulting in overdrafts as he continued to use his debit card. ECF No. 4. Possession of such a substantial amount of cash just ten days before

filing his complaint is starkly inconsistent with Plaintiff's claim that he is "unable to pay the costs of these proceedings." ECF No. 2 at 1. Additionally, public sources suggest that Plaintiff owns a 2015 Mustang, yet he omitted such an asset from his response to Question 6.

Plaintiff may be eligible for IFP status. However, based on the conflicting information he has provided in the application and the complaint, it is impossible for the Court to make that determination. Accordingly, should Plaintiff decide to amend his complaint to cure the deficiencies addressed below, I recommend that the Court order him to file an amended IFP application that contains a complete and truthful exposition of his financial circumstances, including how he satisfies his household expenses (since his IFP application states that he pays none). If Plaintiff does not file an amended IFP application within thirty days of the Court's adoption of this report and recommendation, I recommend that his motion for IFP status be denied. If he timely files an amended IFP application, it will be reviewed and a determination will be made whether he is IFP-eligible. If he is found not to be eligible, he will be required to pay the $400 filing fee in order to proceed with the case.

## II.     Screening the Complaint

Plaintiff's complaint alleges that he used his Bank of America debit card to "purchase goods" when there was insufficient money in his checking account; the Bank honored the charges, causing the account to be overdrawn by $1,083.52. ECF No. 1 at 9. As a result of his overdrafts, he alleges that the Bank "will take the $968.00 from my October checks leaving me with no money until I receive my November." ECF No. 1 at 6, 9. Plaintiff's IFP motion states that he receives $518 a month in army pension benefits and $450 in social security benefits. ECF No. 2 at 1. The complaint exhibit, pages from his Bank of America checking account statement, confirms deposits into the account in issue of $518 from "VACP TREAS" and of

$450 from "SSA TREAS;" according to the statement, both were applied by the Bank to reduce the negative balance caused by Plaintiff's overdrafts from -$1,083.52 to -$115.52. ECF No. 4 at 1. The complaint states that he is "suing Bank of America for 10 million to 1 billion for [the] criminal act committed." ECF No. 1 at 9. In an October 7, 2016, filing, Plaintiff amended his demand to "1 million dollars." ECF No. 5.

The legal standard for screening a complaint for failure to state a claim pursuant to §§ 1915(e)(2) and 1915A is the same used when ruling on a Rule 12(b)(6) motion to dismiss. Hodge v. Murphy, 808 F. Supp. 2d 405, 408 (D.R.I. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Section 1915 also requires dismissal if the Court finds that the case is frivolous. 28 U.S.C. § 1915(e)(2)(B)(i). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A viable complaint must also satisfy Fed. R. Civ. P. 8(a), which requires a plaintiff to include "a short and plain statement of the grounds for the court's jurisdiction . . . and of the claim showing that the pleader is entitled to relief," as well as Fed. R. Civ. P. 10(a-b), which requires a caption and claims set out in numbered paragraphs, each limited to a single set of circumstances.

Plaintiff checked the "federal question" box as the basis for federal court jurisdiction. ECF No. 1 at 4. Nevertheless, his pleading simply sets out the facts and does not identify any federal laws, ordinances or regulations violated by the Bank nor does it set out any federal common law theories of recovery. See 28 U.S.C. § 1331. Under such circumstances and mindful of Plaintiff's *pro se* status, before recommending that the complaint be dismissed, the Court must examine its allegations to determine whether he might have a legal claim arising

under federal law for bringing an action against the Bank. The Court must also examine whether there is a state law claim that might be brought in federal court based on diversity jurisdiction. 28 U.S.C. § 1332(a).

The most obvious cause of action would arise under 42 U.S.C. § 407(a), which protects social security benefits from being "subject to execution, levy, attachment, garnishment, or other legal process." 42 U.S.C. § 407(a). The problem is that it is well settled that applying social security deposits to cover overdrafts and overdraft fees in the same account into which they were deposited does not violate § 407(a). Lopez v. Washington Mut. Bank, FA, 302 F. 3d 900, 905 (9th Cir. 2002) ("In our view, it is sufficient and 'meaningful' consent for the recipient to have executed the account agreement which notified him of the bank's standard practice of using deposits to cure overdrafts and then to have provided the bank with a deposit to apply in such fashion"; application of social security benefits to reduce overdraft does not violate § 407(a)); Sanford v. Standard Fed. Bank, No. 10-12052, 2011 WL 721314, at *7 (E.D. Mich. Feb. 23, 2011) ("There is no indication that the imposition of an overdraft fee is an adjudicative process, and absent such a showing, the Court cannot conclude that BOA's alleged setoff implicates 42 U.S.C. § 407(a)."); Coon v. Trustco Bank Corp., No. 1:07-CV-1115(GLS/RFT), 2008 WL 2096534, at *3 (N.D.N.Y. May 16, 2008) (bank was "fully entitled to enforce the terms of its agreement with [the plaintiff] by deducting unpaid overdraft fees from Social Security funds deposited to his account."); Wilson v. Harris N.A., No. 06 C 5840, 2007 WL 2608521, at *11 (N.D. Ill. Sept. 4, 2007) (use of social security deposits to pay overdrafts does not violate § 407(a)).

In each of these cases, the court focused both on the legal conclusion that application of deposited funds to reduce an overdraft does not amount to "legal process," as well as on the

account agreements, by which the individual consented to the bank's practices for overdrafts and setoffs. These holdings are consistent with the Supreme Court's holding in Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385 (2003), that "other legal process" should be understood to be a "process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability." No cases holding otherwise were found.

Focusing on Plaintiff's army pension, the Court has also considered whether Plaintiff's complaint might state a viable claim under 38 U.S.C. § 5301(a), which makes veterans benefits "exempt from the claim of creditors, and . . . not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever." 38 U.S.C. § 5301(a)(1). This theory suffers from the same deficit, in that Section 5301(a)(1)'s language is analogous to that of 42 U.S.C. § 407(a) and must be similarly interpreted. See United States v. Chorney, 453 F. App'x 4, 7 (1st Cir. 2011) (seizure of both social security and veterans benefits to pay a court-ordered fine or restitution is improper); Gossett v. Czech, 581 F.3d 891, 895 (9th Cir. 2009) (discussing similarities and differences between statutory sections); Nelson v. Heiss, 271 F.3d 891, 895 (9th Cir. 2001) ("While the language is somewhat different from § 5301(a), § 407(a)'s reach is essentially the same."). Because these sections are routinely interpreted analogously by the courts, it follows that Plaintiff's army pension is not shielded from overdraft fees. Consequently, just as § 407(a) does not help him, Plaintiff also has not stated a claim under § 5301(a).

Based on the foregoing, the Court cannot discern a viable federal cause of action arising from the Bank's action in applying his social security and veterans benefits to partially cover an overdraft in the same account into which they were deposited. Accordingly, as drafted, the complaint cannot sustain federal question jurisdiction. As to a state law claim arising under the Court's diversity jurisdiction, the Court's survey of whether there conceivably is such a cause of action has come up dry. Moreover, the likelihood that such a claim might exist is remote – the supremacy clause of the United States Constitution, Article VI, requires Rhode Island to defer to the statutory scheme of the Social Security Act (and presumably to the analogous federal statutory scheme regarding veterans' benefits) for the allocation of benefits. See Kirk v. Kirk, 577 A.2d 976, 979-80 (R.I. 1990) ("Congress has clearly stated that Social Security benefits are not to be treated by State courts as property."). While there seems to be diversity of citizenship, even if Plaintiff had a viable state law claim, his pleading fails to establish the existence of the threshold requirement of $75,000 in controversy, necessary for diversity-based federal jurisdiction, because it claims that the Bank's actions resulted in a loss of less than $1,500.[2] 28 U.S.C. § 1332(a).

Based on the foregoing, I conclude that, in its present form, Plaintiff's complaint fails to state a claim. Accordingly, I recommend that Plaintiff be given a chance to amend his pleading to assert a valid claim, if he has one. If he fails to amend, or if his amended pleading still fails to state a claim, I recommend that this action be dismissed.

### III.     Conclusion

---

[2] Plaintiff cannot add his $ 1 million claim for punitive damages to reach the jurisdictional amount in controversy because he has no legal basis for asserting such a punitive damage claim. While punitive damages can be included in the jurisdictional minimum, they do not count if the claim for them is "patently frivolous and without foundation" under substantive law. St. Paul Mercury Indemnity Co. v. Red Cab Co., 330 U.S. 283, 289 (1938) ("But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.").

I find that this case is subject to dismissal at screening based on the pleading's failure to state a claim resulting in this Court's lack of subject matter jurisdiction. Accordingly, I recommend that this Court provide Plaintiff with thirty days from the adoption of this report and recommendation to file an amended complaint. Brown v. Rhode Island, 511 F. App'x 4, 5, 7 (1st Cir. 2013) (per curiam). If he fails to do so or if he files a new complaint that is still deficient, I recommend that the complaint (ECF No. 1) be summarily dismissed without prejudice. See 28 U.S.C. § 1915(e)(2). In addition, I find that Plaintiff's IFP motion should be denied without prejudice because it fails to provide financial information sufficient to allow the Court to find him eligible for IFP status. I recommend that this Court permit him to refile it with sufficient information to establish that he is unable to pay fees and costs within thirty days from the adoption of this report and recommendation. If he files a new IFP application by that deadline, it will be reviewed and the Court will make a determination of eligibility; if he does not, I recommend that his IFP motion be denied and that he be directed to pay the $400 filing fee.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 1, 2016